

101 Jefferson Drive
Menlo Park, CA 94025-1114
PHONE: 650.838.4300
FAX: 650.838.4350
www.perkinscoie.com

Amy Sun
PHONE: (650) 838-4361
FAX:    (650) 838-4561
EMAIL: ASun@perkinscoie.com

January 4, 2007

**VIA ELECTRONIC FILING**

The Honorable James Larson
Chief Magistrate Judge
450 Golden Gate Avenue
San Francisco, CA 94102

**Re:    Celerity, Inc. v. Ultra Clean Technology Systems and Service, Inc. and Ultra Clean Holdings, Inc.**

Dear Chief Magistrate Judge Larson:

The parties in the above-referenced action have met and conferred in good faith but were unable to draft a joint statement regarding two discovery disputes that have arisen in this matter. Accordingly, please find attached Defendants Ultra Clean Technology Systems and Service, Inc.'s and Ultra Clean Holdings, Inc.'s letter brief addressing the two discovery disputes.

Very truly yours,

Amy Sun

Enclosure

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · LOS ANGELES
MENLO PARK · OLYMPIA · PHOENIX · PORTLAND · SAN FRANCISCO · SEATTLE · WASHINGTON, D.C.

Perkins Coie LLP and Affiliates

## First Discovery Dispute

Celerity, Inc. ("Celerity") propounded interrogatories requesting information on the "as-assembled" and "as-shipped" configurations of the accused product. Due to the nature of the accused product, which can be assembled into many possible configurations and which itself is only a component of a larger functional assembly, Defendants Ultra Clean Technology Systems and Service, Inc. and Ultra Clean Holdings, Inc. (collectively, "UCT") objected and responded to Celerity's interrogatories as best as they could to the extent they understood what information was being sought.

Following a meet and confer with Celerity's counsel clarifying what information Celerity was seeking through its interrogatories, UCT agreed to and, as of today, supplemented their responses to these interrogatories. Specifically, UCT confirmed the number of accused products built to date and identified by Bates number the schematics and bills of materials corresponding to those units.[1] UCT has also produced, as soon as it became available, an invoice generated from the delivery of an evaluation unit.[2] UCT further explained that, with respect to any quotes and accompanying schematics and bills of materials generated since UCT's initial document production, to the extent that such documents exist, UCT would provide them no later than January 9, 2007, to ensure that it can check with all UCT employees (who are presently out of the office) who have any possible documents related to such invoices. Celerity's motion to compel simply cannot expedite a sooner response from UCT. More importantly, as UCT has already either provided or agreed to provide at the soonest possible date information responsive to Celerity's interrogatories, Celerity's motion to compel seeks the Court's intervention unnecessarily. UCT respectfully requests the Court to deny Celerity's motion to compel.

## Second Discovery Dispute: Waiver of Attorney-Client Privilege and Work Product Immunity

UCT believes that the proper scope of the waiver with respect to the opinions of counsel produced in this case extends only so far as

(1) Pre-litigation documents and communications;

(2) On the subject of non-infringement or invalidity of the patents-in-suit (the subject matter of the opinions of counsel relied upon); and

(3) Between or referring to communications between opinion counsel and UCT.

Celerity would have the Court order UCT to produce communications between UCT and trial counsel, despite the fact that a wall between trial counsel and opinion counsel was put in place prior to the commencement of litigation, such that trial counsel had no involvement in the

---

[1] Celerity therefore cannot continue to claim that it still does not know the correct number of accused products built to date. *See* Celerity Letter Brief (Docket No. 111), Part I.

[2] Celerity insinuates that in providing "only" a "single sales document" to date, UCT has withheld the production of other sales information for the accused product. *See* id. First, UCT disputes that the document in question, relating to an evaluation unit, evidences a sale or even offer for sale. In any case, regardless of the evaluation unit, UCT has made no sales of the accused product and therefore has not withheld any sales information pertaining to the accused product.

1

pre-litigation preparation of the opinions of counsel now relied upon.  As was held in Collaboration Properties, Inc. v. Polycom, Inc., 224 F.R.D. 473, 476 (N.D. Cal. 2004) (citing Sharper Image Corp. v. Honeywell Int'l, Inc., 222 F.R.D. 621, 643-46 (N.D. Cal. 2004)), communications between trial counsel and the client are not waived where trial counsel had "*no involvement in providing pre-litigation advice.*"

Trial counsel's work, both pre-litigation and following commencement of the litigation, involved only the unquestionably protected strategizing for trial and legal and factual analyses. In re EchoStar Communications Corp., 448 F.3d 1294, 1303 (Fed. Cir. 2006) (citation omitted); *see also* Collaboration Properties, 224 F.R.D. at 476 (reiterating what "courts have held . . . generally," namely, that waivers "do[] not extend to litigation-related communications after the complaint is filed," *notwithstanding* that litigation-related communications and documents are "likely to relate[] to the subject matter of the asserted defense," because "litigation-related work product deserves greater protection").  Therefore, not only is a privilege log not required for such documents and communications, but there are also no relevant privileged documents or communications involving trial counsel which could be entered on such a privilege log in the first place.

Waiver of the attorney client privilege and work product immunity involves only those communications between opinion counsel and UCT or communications referencing communications with UCT.  In Informatica Corp. v. Business Objects Data Integration, Case No. C 02-3378 JSW (JL), 2006 WL 2038461 at *7 (N.D. Cal. July 14, 2006), *aff'd*, 2006 WL 2329460 (N.D. Cal. Aug. 9, 2006) (citing EchoStar, 448 F.3d at 1303) (emphasis added), this Court explained that opinions of counsel are only relevant to "inform[ing] the court of the [accused] infringer's *state of mind*."  In other words, "[i]t is what the alleged infringer *knew or believed*, and by contradistinction not what other items counsel may have prepared but *did not communicate* to the client, that informs the court of an infringer's willfulness." Id. (emphasis added).  That is because information which is not communicated to a client simply cannot influence the client's state of mind or inform the inquiry into the reasonableness of the client's reliance on the opinion of counsel.

Thus, the Court held that the only two categories of discoverable information are: (1) attorney-client communications "concerning the subject matter [*i.e.*, patent infringement, validity, or enforceability] of the case," and (2) documents referencing the former.  Accordingly, internal communications between trial counsel, between opinion counsel, and even between trial counsel and opinion counsel which do not refer to client communications have no relevancy to the client's state of mind, even if they relate to patent non-infringement, invalidity, or unenforceability. *See* id. at *6-7 (citing EchoStar, 448 F.3d at 1303).  Therefore (to the extent that they actually exist in the present case), such documents and communications are neither waived nor discoverable.

In sum, waiver does not extend to any documents and communications which (1) are dated after commencement of this action, (2) pertain to subject matter other than patent non-infringement and invalidity (the subject of the opinions of counsel), (3) occurred between trial counsel and UCT, or (4) occurred internally between trial counsel and opinion counsel and do not refer to communications with UCT regarding patent non-infringement or invalidity.  UCT respectfully requests the Court to deny Celerity's motion to compel.

2