United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELERITY, INC, | No. C 05-4374 MMC (JL) |
| Plaintiff, | |
| v. | **ORDER DENYING PROTECTIVE ORDER (Docket # 83)** |
| ULTRA CLEAN HOLDING, INC, ET AL., | |
| Defendants. | |

**Introduction**

Plaintiff's motion for protective order re depositions of David Shimmon and John Murphy (Docket # 83) came on for hearing. Appearing for Plaintiff was Richard Swope, THELEN, REID & PRIEST, LLP. Appearing for Defendant was Lisa Kobialka, PERKINS COIE LLP.

After hearing oral argument the Court ordered production for *in camera* review of the transcript of the deposition of Joseph Foster (filed under seal). After reviewing the deposition, the Court determines that there is no indication that either Mr. Shimmon or Mr. Murphy possess the requisite firsthand and non-repetitive knowledge to justify their depositions. Therefore, the motion for protective order precluding their depositions at this time is granted.

UCT may renew its notice of deposition for Murphy and Shimmon only if other methods of discovery, including interrogatories and depositions of lower-level employees of Celerity, prove to be unsatisfactory.

**Background**

Subject matter jurisdiction is conferred on this Court under the national patent laws. 28 U.S.C. § 1331 & 1338(a). All discovery was referred by the district court (Hon. Maxine M. Chesney) as provided by 28 U.S.C. §636(b) and Civil Local Rule 72.

Celerity's infringement allegations are based on its belief that Ultra Clean Holdings and Ultra Clean Technology are making, selling, or offering for sale products which infringe one or more of the patents in suit, specifically through their Predator product line. Ultra Clean Technology filed its Complaint for Declaratory Judgment in response to Celerity's allegations of infringement and aggressive efforts to eliminate all commercial activity by Ultra Clean Technology as a competitor in the field of gas delivery systems, which included making threats to Ultra Clean Technology's customers. Ultra Clean Technology's and Ultra Clean Holding's non-infringement and invalidity allegations are based on their belief that they do not infringe any valid claim of the asserted patents. Additionally, Ultra Clean Holdings asserts that it is a holding company that does not make, use, sell or offer for sale any products.

The discovery cut-off was December 22, 2006. Expert disclosures were due January 12, 2007 and expert discovery cut-off is February 16, 2007. An 8-10 day jury trial will commence June 4, 2007. A further status conference will be held March 9, 2007.

**This Motion**

On November 8, 2006, UCT noticed the depositions of John Murphy and David Shimmon. Swope Decl., ¶¶ 2-3. John Murphy is President, CEO, and COO of Celerity, Inc. Murphy Decl., ¶ 1. Celerity contends that Mr. Murphy has only been an officer of Celerity, Inc., since September, 2005. Id., at ¶ 2. Celerity also contends that he has no personal knowledge of the events giving rise to this litigation and his involvement in the litigation is

limited to receiving status reports from counsel. Id., at ¶¶ 4-10. Mr. Murphy was not CEO of Celerity, Inc. at the time of the events giving rise to this dispute. Id., at ¶ 4.

David Shimmon is Executive Chairman of the Board of Celerity, Inc. Shimmon Decl., ¶ 1. Celerity contends that he has no personal knowledge of the events giving rise to this litigation and his involvement in the litigation is limited to receiving status reports from counsel. Id., at ¶¶ 5-11.

The parties met and conferred at various times, most recently on November 8, 2006 to attempt to resolve their dispute regarding UCT's notice of deposition. Celerity argues that Murphy and Shimmon are high level corporate officers, subject to the requirements for taking an "apex" deposition, and that UCT should not be permitted to depose them unless and until it demonstrates that less intrusive means of discovery, such as interrogatories and depositions of lower-level employees of Celerity, have failed.

The parties were unable to resolve their dispute and Celerity filed this motion for a protective order quashing the depositions of Murphy and Shimmon pursuant to Federal Rule of Civil Procedure 26(c)(1) on the grounds that neither Murphy nor Shimmon has superior or unique personal knowledge of discoverable information, that testimony of lower level employees with more intimate knowledge of the case have not yet been taken, and that Murphy's and Shimmon's testimony would be, at best, repetitive.

Celerity cites the most recent reported case in the Northern District of California to discuss the depositions of executives. Judge Seeborg in *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2006 U.S. Dist. LEXIS 67284, 2006 WL 2578277 (N.D. Cal. 2006) observed that high-level corporate officers can be protected from depositions when the officer has no first-hand knowledge of the facts of the case or where the officer's testimony would be repetitive.

Celerity argues that because both Murphy and Shimmon are high-level officers at Celerity, and neither have personal knowledge of the events giving rise to this litigation, and because the second-hand knowledge that Murphy and Shimmon do possess is almost by definition repetitive, they should be protected from having to give deposition testimony in

this case unless UCT can show that either Murphy or Shimmon possess first-hand knowledge that cannot be obtained through other means.

UCT contends that Celerity has prejudiced its defense of this lawsuit by delaying depositions of Celerity's employees, permitting UCT to take only one 30(b)(6) deposition on June 5, 2006 and the deposition of Eric Redemann, one of the inventors of the patent-in-suit, on December 12, 2006. The remaining depositions are scheduled thus: Joseph Foster on December 15, 2006; David Somo on December 20, 2006. Celerity's counsel has confirmed that Shimmon and Murphy are available for deposition between December 19-21, 2006. (Kobialka Decl., Ex. (9).

UCT's purported reason for taking these depositions is:

> "Messrs. Shimmon and Murphy are involved in making important corporate decisions, including the decision to pursue this lawsuit, allege willful infringement and seek monetary damages and injunctive relief against Ultra Clean Holdings and Ultra Clean Systems and Services. For example, Messrs. Shimmon and Murphy played key roles with respect to the acquisition of Celerity, which included Celerity's intellectual property."

(Kobialka Declaration at Exhibit 7).

Celerity contends that a Mr. Foster, not Murphy, made the decision to pursue this litigation (Reply Memorandum at page 3).

Some of these subjects, such as the decision to pursue this lawsuit and what relief to seek, border on work product, representing as much legal strategy as corporate decision-making and as such could be improper questions at deposition. Others are legitimate areas of inquiry, for example the acquisition of Celerity and its intellectual property.

UCT also argues that Murphy and Shimmon possess unique personal knowledge of the chain of title to the patents-in-suit, through the various mergers Celerity has gone through. In addition, says UCT, Murphy, as a principal of TPG, evaluated Celerity's intellectual property, as part of the decision by TPG to acquire Celerity, which would be relevant to the amount of damages in this case. Shimmon, as a former principal of UNIT, has unique personal knowledge of the chain of title to the patents-in-suit.

**Analysis**

Virtually every court that has addressed deposition notices directed at an official at the highest level or "apex" of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment. *See, e.g., Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.C. RI 1985). Where a high-level decision maker "removed from the daily subjects of the litigation" has no unique personal knowledge of the facts at issue, a deposition of the official is improper. *Baine v. General Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991); *see also, First United Methodist Church of San Jose, v. Atlantic Mutual Insurance Co.,* 1995 WL 566026 (N.D. Cal. 1995); *Salter v. Upjohn Co.,* 593 F.2d 649 (5th Cir. 1979). This is especially so where the information sought in the deposition can be obtained through less intrusive discovery methods (such as interrogatories) or from depositions of lower-level employees with more direct knowledge of the facts at issue. (*See, e.g., Salter*, 593 F.2d at 651.)

If this Court grants Celerity's motion for protective order, it need not absolutely preclude UCT from taking the depositions of Celerity's top two executives, but may merely postpone them until and if UCT can demonstrate that other less intrusive discovery methods, such as interrogatories and depositions of Celerity's lower level employees, are inadequate. As the court commented in the *Salter* case:

> It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error. See 4 J.Moore & J.Lucas, Moore's Federal Practice P 26.69 (3d ed. 1976); 8 C.Wright & A.Miller, Federal Practice & Procedure section 2037 (1970). We do not believe that this first order of the trial judge was such a complete prohibition, however. Although the court's order vacated plaintiff's notice to take the deposition of Dr. Hubbard, it is clear that the order merely required plaintiff to depose the other employees that Upjohn indicated had more knowledge of the facts before deposing Dr. Hubbard. The trial judge had indicated that if the testimony of the other employees was unsatisfactory, he would allow plaintiff to take Dr. Hubbard's deposition. *Salter,* 593 F.2d at 651.

UCT attempts to distinguish all the cases cited by Celerity as having to do with government officials, rather than corporate executives. The Court finds this distinction to be meaningless. UCT contends that Shimmon has personal knowledge regarding the chain of

title to the patents in suit, that he participated in the acquisition of Celerity by Texas Pacific Group ("TPG") and thus has personal knowledge regarding the valuation of Celerity's intellectual property and that he has personal knowledge regarding the decision to sue Ultra Clean. Shimmon was also at Celerity before Murphy and thus would have knowledge regarding sales of Celerity's products that are covered by the patents-in-suit prior to Mr. Murphy's tenure.

UCT fails to show that this personal knowledge, if Shimmon has it, is "unique." This is an essential component of the standard for an apex deposition - unique personal knowledge by the high corporate official, unavailable from less intrusive discovery, including interrogatories and the depositions of lower-level employees.

UCT disparages Celerity's reliance on *Google v. American Blind,* 2006 WL 2578277, because Judge Seeborg of this Court actually ruled that American Blind was entitled to depose Google founder and CEO Larry Page after learning from Google's designated 30(b)(6) witness that Page may have relevant firsthand information.

The Court in *Google* held:

> Accordingly, the motion will be granted with respect to the deposition of Larry Page. The deposition, however, shall be limited in scope to Page's knowledge of and involvement in the policy change and shall be limited to three hours .FN3

1. FN3. Google resists this deposition on procedural grounds, but also suggests that the deposition of Page, a busy, high-level executive, would be inappropriate even if it had been timely noticed. A party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied, however "courts are sometimes willing to protect high-level corporate officers from depositions when the officer has no first hand knowledge of the facts of the case or where the officer's testimony would be repetitive." First United Methodist Church of San Jose v. Atlantic Mutual Ins. Co., 1995 WL 566026, at *2 (N.D.Cal.1995). Courts generally refuse to allow the immediate deposition of a high level executive, often given the sobriquet "apex deponent," before the testimony of lower level employees with more intimate knowledge of the case has been secured. See Salter v. Upjohn, 593 F.2d 649, 651 (5th Cir.1979) (granting protective order for executive where plaintiff had sought to depose the president of the company before deposing lower level executives); Baine v. General Motors Corp,, 141 F.R.D. 332 (M.D.Ala.1991) (granting protective order for Vice President of General Motors where plaintiff had failed first to depose lower level employees). Here, American Blind is seeking to depose Page only after learning from Google's designated 30(b)(6) witnesses that he may have relevant first hand information.

*Google,* 2006 WL 2578277, *3.

In the case at bar, UCT wants Shimmon to clarify the "murky" picture of the chain of title. Apparently Eric Redemann, one of the inventors of the patent-in-suit, testified at his own deposition that there had been numerous changes over the years with respect to the chain of title to Celerity and presumably to its intellectual property. His testimony UCT finds confusing with respect to UNIT and its relationship with Celerity (Kobialka Decl., Ex. 11 at 12:8-14:18). UCT hopes that Shimmon may have firsthand information to clear up the confusion.

The ruling by the court in the *Google* case does not really help UCT, since the "confusion" created by Eric Redemann may well be cleared up by another employee, and UCT presents no specific evidence that Redemann testified that only Shimmon could clarify the chain of title to the patent.

UCT may only depose Shimmon and Murphy after either interrogatories or the depositions of lower-level employees have failed to provide the discovery it seeks. UCT seems to believe that as long as it schedules the depositions of Shimmon and Murphy after the depositions of the lower level employees, that it has met its burden to justify these apex depositions according to the case law. This is not the law. Nor would it be proper for UCT to take half-hearted depositions of lower-level employees in order to set up an opportunity to depose Shimmon and Murphy. It must make a good faith effort to extract the information it seeks from interrogatories and depositions of lower-level Celerity employees.

During oral arguments before the Court on December 20, 2006, attorneys for Ultra Clean Technology Systems and Service, Inc. and Ultra Clean Holdings, Inc. (collectively, "UTC") suggested that the deposition testimony of Joseph Foster (whose deposition had just been taken) provided some evidence that either or both Shimmon and Murphy had first-hand and non-repetitive information that would require the Court to deny a protective order preventing the depositions of Shimmon and Murphy. See, e.g., *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2006 U.S. Dist. LEXIS 67284 (N.D. Cal. 2006) (allowing the deposition of one of Google's founders only after an evidentiary showing that implicated

first-hand knowledge to the founder.). The Court ordered that the parties submit supplemental briefing as to whether Mr. Foster's deposition transcript provides a basis for deposing Shimmon or Murphy.

**Conclusion**

The Court reviewed the parties' briefing and the deposition transcript of Joseph Foster and found no indication that either David Shimmon or John Murphy possess firsthand and non-repetitive knowledge regarding issues relevant to this lawsuit. Accordingly, Celerity's motion for protective order is granted, pending the taking of less intrusive methods of discovery, including interrogatories and depositions of lower-level Celerity employees. UCT may renew its notice of depositions of Shimmon and Murphy should those means of discovery prove inadequate.

IT IS SO ORDERED.

DATED: January 24, 2007

_____
JAMES LARSON
Chief Magistrate Judge