United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELERITY, INC, | No. C 05-4374 MMC (JL) |
| Plaintiff, | |
| v. | **ORDER** |
| ULTRA CLEAN HOLDING, INC, ET AL., | |
| Defendants. | |
| _____/ | |

**Introduction**

Subject matter jurisdiction is conferred on this Court under the national patent laws. 28 U.S.C. § 1331 & 1338(a). All discovery was referred by the district court (Hon. Maxine M. Chesney) as provided by 28 U.S.C. §636(b) and Civil Local Rule 72. The parties filed letter briefs regarding two discovery disputes and the Court heard oral argument. Robert Camors, THELEN REID BROWN RAYSMAN & STEINER, appeared for Celerity. Lisa Kobialka, PERKINS COIE, appeared for Ultra Clean Technology and Ultra Clean Holdings ("UCT"). The matter having been fully considered and good cause appearing it is hereby ordered that Celerity's motion at Docket # 111 to compel further discovery and for a broader definition of the scope of waiver of attorney-client privilege and the work product immunity and for extension of discovery is granted in part. UCT's motion at Docket # 112 to deny additional discovery and for a narrower scope of waiver is denied.

## Background

Celerity's infringement allegations are based on its belief that UCT is making, selling, and offering for sale products which infringe one or more of the patents in suit, specifically through the Predator product line.

UCT filed its Complaint for Declaratory Judgment in response to Celerity's allegations of infringement and aggressive efforts to eliminate all commercial activity by UCT as a competitor in the field of gas delivery systems, which included making threats to UCT's customers. UCT's non-infringement and invalidity allegations are based on the belief that the products do not infringe any valid claim of the asserted patents. Additionally, Ultra Clean Holdings asserts that it is a holding company that does not make, use, sell or offer for sale any products.

The discovery cut-off was December 22, 2006. Expert disclosures were due January 12, 2007 and expert discovery cut-off was February 16, 2007. An 8-10 day jury trial will commence June 4, 2007. A further status conference will be held March 9, 2007.

## This Motion

There are two motions before the Court: (1) Celerity's motion to compel further answers to interrogatories and production of documents and for a finding of the scope of waiver due to UCT's invocation of the advice of counsel defense and (2) UCT's motion that it has produced all responsive discovery and for a finding of a narrower scope of waiver. Here are the parties' positions on each motion:

1. Celerity's motion to compel further responses from UCT to Celerity's Interrogatories and Requests for Production of Documents.

Celerity asks this Court to order UCT to provide:

- Complete and accurate identification of documents showing the as-assembled configurations and bills of materials ("BOM's");
- All documents related to the ten quotes;
- An accurate count of how many Predator systems have been assembled to date, and a description of their dispositions; and

    •     To hold open depositions to authenticate and discuss any documents produced or claimed not to exist pursuant to this order.

### UCT Responds:

With respect to Interrogatories and Documents:

UCT met and conferred with Celerity and agreed to supplement its responses to interrogatories. It confirmed the number of accused products built to date and identified by Bates number the schematics and bills of materials corresponding to those units. UCT also produced an invoice generated from the delivery of an evaluation unit. To the extent that such documents exist, UCT will produce accompanying schematics and bills of materials generated since UCT's initial document production.

### Conclusion re Interrogatories and Documents

At the hearing on this motion the parties disagreed sharply over definitions of "as assembled", "offered for sale" and other terms. Celerity professed to be unable to discern which documents applied to which layouts for which specifications for which quotes for which customers. UCT informed the Court that there are ten quotes and Celerity contends that UCT's Vice-President of Sales, Deborah Hayward, admitted that UCT maintains each product layout as specified by each customer. Celerity also requested that UCT provide electronic versions of Computer Assisted Design ("CAD") layouts rather than printouts of one aspect of a design. UCT responded that it may not have maintained the CAD layouts in electronic form, but that it produced documents by layout per specification per quote. Celerity says it received a "streaming video of Bates numbers" with no indication which quotes the documents applied to. UCT complains that it would be terribly burdensome to organize its responses by quote and that Celerity should have framed its interrogatories to ask for documents to be identified in this way.

### Order re Written Discovery

The Court hereby orders UCT to re-open the deposition of Deborah Hayward, UCT Vice-President of Sales, to clarify and confirm what documents have been identified and produced and to specify which quotes for which customers they apply to.

1    If a quote has progressed to the point where an electronic CAD has been prepared,
2 then that should also be produced in electronic form.

### Scope of Waiver

### Celerity's Position

Celerity claims that UCT has waived attorney-client privilege and the work product protection by relying on an advice-of-counsel defense and employing the same counsel as both opinion counsel and trial counsel.

Celerity asks this Court to order the following from UCT and its counsel:

- All attorney-client communications between anyone at UCT and any counsel on the subjects of the infringement or non-infringement of any accused product to include communications about the identification of any accused product and on the subject of the validity or invalidity of the patents in suit upon which UCT now relies;
- All work product communicated to UCT on those same subjects by any counsel, including trial counsel;
- All work product which reflects or embodies any communication on those subjects drafted by any counsel, including work product drafted by trial counsel;
- An adequate privilege log for all responsive communications or work product that is withheld by UCT on attorney-client or work product grounds; and
- An order compelling any witness that was instructed not to answer a question in deposition on the grounds of UCT's narrow construction of the waiver to answer such questions.

### UCT Responds:

With respect to waiver, UCT argues that the proper scope of waiver with respect to the opinions of counsel produced in this case extends only so far as:

(1)   Pre-litigation documents and communications;

(2) On the subject of non-infringement or invalidity of the patents-in-suit (the subject matter of the opinions of counsel relied upon); and

(3) Between or referring to communications between opinion counsel and UCT.

At the hearing on this motion, UCT's counsel stated that a wall had been erected at Perkins Coie between trial counsel and opinion counsel and that there were no communications between them.

UCT argues that according to Patent Local Rule 3-8, UCT is not obliged to prepare a privilege log for work product withheld from Celerity.

Patent Local Rule 3-8 provides:

3-8. Willfulness.

Not later than 50 days after service by the Court of its Claim Construction Ruling, each party opposing a claim of patent infringement that will rely on an opinion of counsel as part of a defense to a claim of willful infringement shall:

(a) Produce or make available for inspection and copying the opinion(s) and any other documents relating to the opinion(s) as to which that party agrees the attorney-client or work product protection has been waived; and

(b) Serve a privilege log identifying any other documents, except those authored by counsel acting solely as trial counsel, relating to the subject matter of the opinion(s) which the party is withholding on the grounds of attorney-client privilege or work product protection.

A party opposing a claim of patent infringement who does not comply with the requirements of this Patent L.R. 3-8 shall not be permitted to rely on an opinion of counsel as part of a defense to willful infringement absent a stipulation of all parties or by order of the Court, which shall be entered only upon a showing of good cause.

This Court finds that the Rule in no way absolves UCT from providing a privilege log. In fact, it obliges UCT to prepare a privilege log for any documents relating to the opinion which "it is withholding on the grounds of attorney-client privilege or work product protection," . . . "except those authored by counsel acting solely as trial counsel."

Celerity's counsel read to the Court a portion of a billing record from UCT which included notation about multiple revisions of the opinion. However, UCT produced only the final version, not any of the earlier drafts. UCT explained that the author overwrote the older drafts in the process of writing the final version. Celerity expressed interest in

receiving the metadata which would reflect these earlier drafts. To the extent this exists it shall be produced. If it doesn't, a sworn declaration to that effect shall be filed.

## Analysis

In a controversy involving assertions of privilege in a patent case, substantive patent law applies, so the law of the Federal Circuit governs, rather than the law of the regional circuit. *In re EchoStar Communications Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006).

Once a party announces that it will rely on advice of counsel, for example, in response to an assertion of willful infringement, the attorney-client privilege is waived. *Id.* at 1299.

There is no dispute that UCT is relying on advice of counsel as a defense to Celerity's claim for infringement of its patents.

The privilege is waived as to all attorney-client communications regarding the same subject matter. *Id.* at 1301.

The Federal Circuit recently issued a briefing order on a petition for writ of mandamus and is considering the question whether a party's assertion of the advice of counsel defense to willful infringement should extend waiver of the attorney-client privilege to communications with that party's trial counsel. *In re Seagate Technology LLC*, 2007 WL 196403 *1 (C.A.Fed. January 26, 2007), citing *In re EchoStar Commc'n Corp.,* 448 F.3d 1294 (Fed. Cir. 2006).

As this Court has previously ruled, where opinion counsel and trial counsel are in the same firm, the same shelter does not extend for communications between a client and trial counsel, *if they are on the subject of the opinion relied on*. Walls or no walls. As this Court has previously held:

> "BODI urges this Court to "not extend the waiver of attorney-client privilege to BODI's trial counsel, but rather follow the Northern District cases that find the trial counsel's communications are not discoverable. E.g., Sharper Image Corp. v. Honeywell International Inc., 222 F.R.D. 621 at 634-46 (N.D.Cal.2004); Collaboration Properties, Inc. v. Polycom, Inc., 224 F.R.D. 473 at 475-77 (N.D.Cal.2004); Terra Novo, Inc. v. Golden Gate Products, Inc., 2004 WL 2254559 at *3 (N.D.Cal.2004)."

> This Court examined those cases and finds they are factually distinguishable: in Sharper Image there was separately retained litigation counsel. In Collaboration Properties trial counsel did not provide any pre-litigation advice. In Terra Novo, trial and litigation counsel were with separate firms. Consequently, BODI's citation to these cases is less than convincing."

*Informatica Corp. v. Business Objects Data Integration, Inc.* 454 F.Supp.2d 957, *961 (N.D.Cal.,2006)

In addition the court in *Terra Novo* found waiver for communications between trial counsel and opinion counsel on the subject matter of the opinion:

> Accordingly, Defendant must disclose all communications between Opinion Counsel and Litigation Counsel. Litigation Counsel must also disclose his firm's work product, if any, that was communicated to Opinion Counsel, whether directly or through the client, prior to the issuance of the Bielen Opinion.

*Terra Novo, Inc. v. Golden Gate Products, Inc.* 2004 WL 2254559, *3 (N.D.Cal.) (N.D.Cal.

In another case in ths district where trial counsel and opinion counsel were of the same firm, the court found waiver of communications between trial counsel and opinion counsel and work product of opinion counsel.

> "Taking into account the pre- and post-EchoStar cases as well as EchoStar itself, the Court concludes that, although EchoStar does not expressly overrule those cases that decline to extend waiver to trial counsel, the thrust of the case is that a blanket immunity for trial counsel is not appropriate. The Federal Circuit's rejection of a temporal limit on waiver-- i.e., that a waiver can extend to advice and work product given after litigation begins--suggests particular solicitude that must be paid to the policies that favor broad waiver."

*Genentech, Inc. v. Insmed Incorporation* 442 F.Supp.2d 838, *846 (N.D.Cal.,2006)

In the *Genentech* case, trial counsel had advised the client whether and when to launch the accused product. The court found waiver for all communications related to this advice.

> "The dividing line revolves around the degree of materiality to the client's decision to launch the accused product (and continue its sale). Only that advice and work product of trial counsel that is reasonably central to that decision--and which presumably would carry the same kind of weight that advice from opinion counsel normally would--is waived."

*Id.* at 847 (N.D.Cal.,2006)

Privilege is also waived as to all factual or non-opinion work product concerning the same subject matter as the opinion relied upon. *EchoStar,* 448 F3d at 1302. This includes documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter. *Id.* at 1302-1303

The privilege is also waived as to all work product that references or describes a communication between the attorney and client, but was not itself actually communicated to the client. An example would be a memorandum or email from an attorney to an associate referencing a phone call with the client, in which counsel indicates a discussion of the client's potential infringement. Such a memorandum would be discoverable. *Id.* at 1304.

What is not discoverable is legal analysis that was not communicated to the client. If such work product is contained within an otherwise discoverable document, the parties should take special care to redact such information and if necessary the Court may review such material in camera.

To summarize the holding in *EchoStar*, which governs waiver in this case:

When an alleged infringer asserts the advice-of-counsel defense regarding willful infringement of a particular patent, it waives its immunity for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, and infringed by the accused. This waiver of both the attorney-client privilege and the work-product immunity includes not only any letters, memorandum, conversation, or the like between the attorney and his or her client, but also includes, when appropriate, any documents referencing a communication between attorney and client. *Id.*

The court in *EchoStar* did not address the issue of any distinction between work product of opinion counsel and trial counsel, or attorney-client communications of opinion counsel and trial counsel, but that distinction is not pertinent here, since the Court's analysis plainly rests on what the client knew and therefore what played a role in the client's belief as to whether its products infringed the patent in suit. *Id.* at 1305.

It is the client's belief which is relevant to willfulness and which is subject to waiver by the advice-of-counsel defense. The court in *EchoStar* held that trial strategy and the like could be withheld or redacted from documents, but that opinions related to infringement were discoverable if they had been communicated to the client. The issue in willfulness, especially alleged continuing willful infringement, is what the client knew, both before and after the filing of the complaint, regardless of who conveyed the information.

In the case at bar, opinion counsel and trial counsel are members of the Perkins Coie firm. At the hearing on these motions, counsel asserted that a wall had been erected between trial and opinion counsel and that there had been no communications between them. In the normal course of conflict-checking, representation of a client by one member of a firm is attributed to the entire firm.

When checking for conflicts of interest, as defined by the California Rules of Professional Conduct, a conflict held by one member is attributed to an entire firm.

> Paragraph (B) is intended to apply only to a member's own relationships or interests, unless the member knows that a partner or associate in the same firm as the member has or had a relationship with another party or witness or has or had an interest in the subject matter of the representation.
>
> California Rules of Prof.Conduct, Rule 3-310

This rule is meant to prevent attorneys from representing adverse interests, which is not the situation here. However, it also reflects the real concern that lines or even walls will be crossed, even if inadvertently, and information will be shared which shouldn't be.

As one court explained in a case where trial counsel's firm was providing opinions to the client after the litigation began:

> "Here, the opinions were rendered by trial counsel's firm after the litigation began. Although it is difficult to understand how there could be a defense to willful infringement based on an opinion rendered after the litigation began, defendants have raised such a defense. They cannot use their status as trial counsel to erect a barrier to discovery of documents to which plaintiff would otherwise be entitled. Neither can counsel play cute by carefully circumscribing information given to the lawyer in the firm who wrote the opinion, and funneling the information given him through other lawyers in the firm to avoid the concept of 'communications between client and attorney.' If a draft opinion is prepared and given to [the opining-litigator]

who reviews in light of trial strategy before it is given to the client and then sends it back for redrafting if it is a little weak or inconsistent with the trial strategy, plaintiffs have a right to know this. It bears on the independence, competence, analysis, credibility, and value of the opinion."

*Michlin v. Canon, Inc.*, 208 F.R.D. 172, 174 (E.D. Mich. 2002).

In the case at bar, we could have precisely the same situation, because trial counsel's firm is also opinion counsel's firm. The Court doesn't presume to mandate who a litigant hires as trial counsel and opinion counsel, nor to forbid the hiring of the same firm as both trial counsel and opinion counsel, but it does seem risky, and a litigant shouldn't presume the privilege of shielding all opinion-related work product and communications to which trial counsel is privy.

UCT contends that all work product and attorney-client communications on the subject of the opinions is privileged if it was prepared after the litigation commenced. To the contrary, waiver of opinions extends to advice and work product given after litigation began. As the Federal Circuit held in the *EchoStar* case:

> "EchoStar contends that waiver of opinions does not extend to advice and work product given after litigation began. While this may be true when the work product is never communicated to the client, it is not the case when the advice is relevant to ongoing willful infringement, so long as that ongoing infringement is at issue in the litigation. See Akeva LLC, 243 F.Supp.2d at 423 ("[O]nce a party asserts the defense of advice of counsel, this opens to inspection the advice received during the entire course of the alleged infringement."); see also Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc., 246 F.3d 1336, 1351-1353 (Fed.Cir.2001) (noting that an infringer may continue its infringement after notification of the patent by filing suit and that the infringer has a duty of due care to avoid infringement after such notification). " *Id.* at 1303 fn 4.

### Conclusion on Waiver

UCT has waived attorney-client privilege and the work product doctrine for all attorney-client communications on the same subject matter as the opinion relied upon, for all work product which references such communications and for all work product on the same subject which was communicated to the client. Waiver extends to communications and documents both before and after the complaint was filed.

### Request for Extension

Finally, Celerity requests that the Court extend Celerity's time to bring a motion to compel additional responses related to the non-infringement and validity opinions of counsel, including the ability to conduct additional motion practice on the adequacy of, and substantive content in, an ordered privilege log. This request is granted, to the extent that the parties shall schedule the deposition of opinion counsel, in light of the scope of waiver discussed above. UCT shall also prepare and submit a privilege log and provide the discovery discussed above. The parties may raise the issue of any further modification of the discovery schedule at the status conference before Judge Chesney.

IT IS SO ORDERED.

DATED: February 28, 2007

```
                                    _____
                                    JAMES LARSON
                                    Chief Magistrate Judge
```