United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CELERITY, INC.,

        Plaintiff/Counter-Defendant

  v.

ULTRA CLEAN TECHNOLOGY SYSTEMS
AND SERVICE, INC.

        Defendant/Counterclaimant

  and

ULTRA CLEAN HOLDINGS, INC.

        Defendant
_____/

No. C-05-4374 MMC

(Consolidated with C-05-3560 MMC)

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT; DENYING AS
MOOT PLAINTIFF'S MOTION TO
STRIKE DECLARATION OF STEVEN
VELINSKY; DENYING IN PART AS
MOOT AND IN PART AS PREMATURE
MOTION IN LIMINE AND MOTION TO
STRIKE PROFFERED TESTIMONY OF
NELSON URDANETA; DISMISSING IN
PART COUNTERCLAIMS AS MOOT;
VACATING HEARING**

     Before the Court is defendants Ultra Clean Technology Systems and Service, Inc.
and Ultra Clean Holdings, Inc. (collectively, "UCT") Motion for Summary Judgment of
Noninfringement of the Patents-in-Suit, pursuant to Rule 56 of the Federal Rules of Civil
Procedure, filed March 2, 2007. Plaintiff Celerity, Inc. ("Celerity") has filed opposition, to
which UCT has filed a reply.

     Also before the Court are two motions filed by Celerity, each filed March 16, 2007:
(1) Motion to Strike the Declaration of Steven Velinsky in Support of Defendants' Motion for
Summary Judgment of Noninfringement of Patents-in-Suit; and (2) Motion in Limine and

1   Motion to Strike the Proffered Testimony of Nelson Urdaneta.  UCT has filed opposition to

2   each such motion, and Celerity has filed a reply to each opposition.

3       Having reviewed the papers filed in support of and in opposition to the motions, the

4   Court deems the motions appropriate for decision on the papers, VACATES the hearing

5   scheduled for April 6, 2007, and rules as follows.

6                                **LEGAL STANDARD**

7       Rule 56 provides that a court may grant summary judgment "if the pleadings,

8   depositions, answers to interrogatories, and admissions on file, together with the affidavits,

9   if any, show that there is no genuine issue as to any material fact and that the moving party

10  is entitled to a judgment as a matter of law."  See Fed. R. Civ. P. 56(c).

11      The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986),

12  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co.

13  v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary

14  judgment show the absence of a genuine issue of material fact.  Once the moving party

15  has done so, the nonmoving party must "go beyond the pleadings and by [its] own

16  affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

17  designate 'specific facts showing that there is a genuine issue for trial.'"  See Celotex, 477

18  U.S. at 324 (quoting Rule 56(c)).  "When the moving party has carried its burden under

19  Rule 56(c), its opponent must do more than simply show that there is some metaphysical

20  doubt as to the material facts."  Matsushita, 475 U.S. at 586.  "If the evidence is merely

21  colorable, or is not significantly probative, summary judgment may be granted."  Liberty

22  Lobby, 477 U.S. at 249-50 (citations omitted).  "'[I]nferences to be drawn from the

23  underlying facts," however, "must be viewed in the light most favorable to the party

24  opposing the motion.'"  See Matsushita, 475 U.S. at 587 (quoting United States v. Diebold,

25  Inc., 369 U.S. 654, 655 (1962)).

26  //

27  //

28
                                            2

**DISCUSSION**

Celerity asserts that UCT has infringed certain claims in six of Celerity's patents, by selling "the Predator System," or, more specifically, by selling at least one "complete gas panel system which is built with [UCT's] Predator System." (See Pl.'s Opp. to Defs.' Mot. for Summ. J. of Non-Infringement at 3:1-3.) Alexander D. Glew, Ph.D. ("Dr. Glew"), an engineering expert designated by Celerity, describes the Predator System as "a modular gas delivery system, integrated gas system, typically used for delivering process fluids within a semiconductor processing tool," wherein components, such as "shut off valves, filters, purifiers, mass flow meters, mass flow controllers, [and] pressure regulators" are "connected together through a modular substrate system." (See Swope Decl. Ex. E ¶ 37.)[1]

In its motion for summary judgment, UCT argues that Celerity lacks evidence to prove the Predator System infringes any of the subject claims, either literally or under the doctrine of equivalents.[2]

//

----

[1]UCT's objection to Dr. Glew's expert report is overruled. Although Celerity filed a declaration authenticating Dr. Glew's report after UCT filed its reply, UCT was not prejudiced thereby, because UCT addressed the merits of the report in its reply.

[2]In its motion, UCT relies on testimony offered by two experts, each of whom opines that the Predator System does not infringe the subject claims, as well as on Celerity's asserted lack of evidence to prove infringement. Celerity has moved to strike certain statements offered by UCT's expert Steven Velinsky, specifically ¶¶ 4-10 of his declaration, and to strike the entirety of UCT's Disclosure of Expert Testimony of Nelson Urdaneta Pursuant to Fed. R. Civ. P. 26(a)(2). Celerity's motions to strike will be denied as moot, for the reason the Court has not relied on the evidence challenged by Celerity. UCT is not required to submit expert testimony in order to establish its entitlement to summary judgment; it may instead identify the particular claim elements it asserts Celerity has failed to prove are present in the Predator System. See Exigent Tech., Inc. v. Atrana Solutions, Inc., 442 F. 3d 1301, 1307-08 (Fed. Cir. 2006) (holding where party moving for summary judgment does not have burden of proof on issue, "movant need not produce evidence showing the absence of a genuine issue of material fact in order to properly support its summary judgment motion," rather, "burden on [movant] may be discharged by showing - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case").
    To the extent Celerity's motion with respect to Nelson Urdaneta includes a motion in limine to preclude UCT, pursuant to Federal Rule of Evidence 403, from offering such expert's testimony at trial, the motion will be denied as premature, without prejudice to Celerity's filing a motion in limine in conformity with the Court's Pretrial Preparation Order.

1

**I. Infringement**

2      Pursuant to 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to

3  sell, or sells any patented invention . . . infringes the patent."  See 35 U.S.C. § 271(a).  "For

4  literal infringement, each limitation of the claim must be met by the accused device exactly,

5  any deviation from the claim precluding a finding of infringement."  Lantech, Inc. v. Keip

6  Mach. Co., 32 F. 3d 542, 547 (Fed. Cir. 1994).  "Even if the accused device or process

7  does not literally infringe, it may infringe under the doctrine of equivalents if the differences

8  between the claimed invention and the accused device or process are insubstantial."

9  Texas Instruments Inc. v. Cypress Semiconductor Corp., 90 F. 3d 1558, 1563-64 (Fed. Cir.

10  1996) (internal quotations and citation omitted).  "To be a substantial equivalent, the

11  element substituted in the accused device for the element set forth in the claim must not be

12  such as would substantially change the way in which the function of the claimed invention

13  is performed."  Perkin-Elmer Corp. v. Westinghouse Elec. Corp., 822 F. 2d 1528, 1532-33

14  (Fed. Cir. 1987) (internal quotations omitted).

15      **A.  U.S. Patent No. 6,142,539 ("'539 Patent")**

16      Celerity asserts the Predator System meets every limitation in Claim 1 of the '539

17  Patent.

18      Claim 1 claims:

19      A flange for coupling to an active site of a one-piece manifold, comprising:

20      a seal;

21      a base, said base having a retainer for coupling the seal in registration with
        the base, the base having a pair of gas ports comprising a gas inlet for
22      receiving gas from an inlet bore of the one-piece manifold and a gas outlet for
        supplying the gas to an outlet bore of the one-piece manifold; and

23
        a fastener retained with the base for coupling with the one-piece manifold
24      when the base is assembled with the one-piece manifold.

25  See '539 Patent col. 12 ll. 38-49.

26          **1.  Literal Infringement**

27      UCT argues, inter alia, that Celerity lacks evidence to prove the Predator System

28

4

has a "one-piece manifold," which is "a manifold made in a single, undivided piece."  (See Order Construing Claims at 2:4-5.)[3]  In response, Celerity relies on its expert, Dr. Glew.

In his expert report, Dr. Glew asserts that the Predator System has a "one-piece manifold," (see, e.g., Swope Decl. Ex. E ¶ 101 ("There are fasteners retained with the base for coupling to the one-piece manifold."), but fails to state any facts, let alone the requisite "detail[ed]" facts, to support such conclusion.  See Techsearch, L.L.C. v. Intel Corp., 286 F. 3d 1360, 1372 (Fed. Cir. 2002) ("The party opposing the motion for summary judgment of noninfringment must point to an evidentiary conflict created on the record, at least by a counter-statement of a fact set forth in detail in an affidavit by a knowledgeable affiant."); United States v. Various Slot Machines on Guam, 658 F. 2d 697, 700 (9th Cir. 1981) (holding "in the context of a motion for summary judgment, an expert must back up his opinion with specific facts").  At his deposition, however, Dr. Glew did provide a factual basis for his opinion, specifically, he testified that the Predator System has a "one-piece manifold" made of a "number of different parts," which "typically" are "nut plates, supports, bolts or fasteners, [and] U tubes of stainless steel" that are "assembled onto a plate" and can be "dissembled by removing the fasteners."  (See Boyle Decl. Ex. 13 at 21:19 - 22:10.)[4] The Court finds that no trier of fact could reasonably find that a "manifold" formed by attaching to one another a number of separate, removable pieces is a "manifold made in a single undivided piece."  See, e.g., Rexnord Corp. v. Laitram Corp., 274 F. 3d 1336, 1341,

---

[3]The term "one-piece manifold" first appears in the preamble of Claim 1, and then appears four times in the claim language.  The parties agree that "one-piece manifold" is a limitation, (see, e.g., Joint Claim Construction and Pre-Hearing Statement, filed May 26, 2006, at 7), and the Court concurs.  See Bicon, Inc. v. Straumann Co., 441 F. 3d 945, 952 (Fed. Cir. 2006) (holding language in preamble is limiting if it "recites essential structure that is important to the invention or necessary to give meaning to the claim," as opposed to "merely stat[ing] the purpose or intended use of an invention").

[4]Additionally, Celerity relies on, albeit for another purpose, the deposition testimony of Matt Milburn ("Milburn"), UCT's Rule 30(b)(6) witness, specifically, Milburn's testimony that the "U tube" in the Predator System can be removed from its "support structures." (See id. Ex. 5 at 240:3-9.)  Again, such testimony establishes that the element to which Dr. Glew refers as the Predator System's "one-piece manifold" is formed from multiple pieces, including pieces that can be removed from one another.

1344-45  (Fed. Cir. 2001) (holding "chain link" to which "attachment" can be mounted is "two-piece" structure; equating "one-piece" with "integral" and distinguishing "two-piece structure" from "an 'integral' structure").[5]

Accordingly, Celerity has failed to create a triable issue of fact as to literal infringement with respect to Claim 1 of the '539 Patent.

### 2. Doctrine of Equivalents

In his report, Dr. Glew opines that the Predator System literally infringes Claim 1, but does not offer an opinion as to infringement under the doctrine of equivalents.  In its opposition, Celerity makes no specific argument that the Predator System, under the doctrine of equivalents, infringes Claim 1.  Celerity cites, however, to portions of Dr. Glew's report in which he expresses his opinion that the Predator System infringes, under the doctrine of equivalents, claims in other patents.  Celerity thus appears to suggest that Dr. Glew's opinions as to other patents are equally applicable to Claim 1 of the '539 Patent. Assuming, arguendo, the Court were to treat such expert testimony as fungible, the testimony, as discussed below, does not assist Celerity.

In discussing the "one-piece manifold" limitation in U.S. Patent No. 6,189,570, Dr. Glew offers an opinion that the "manifold" in the Predator System, if not literally a "one-piece manifold," is a substantial equivalent to the claimed "one-piece manifold" because, according to Dr. Glew, such multi-piece "manifold" performs "substantially the same function in substantially the same way, with substantially the same results" as the claimed "one-piece manifold."  (See Swope Decl. Ex. E ¶ 45.)  If a theory based on such testimony were accepted, the "one-piece" limitation would be written out of the claim.  "If a theory of equivalence would vitiate a claim limitation, . . . there can be no infringement under the doctrine of equivalents as a matter of law."  Tronzo v. Biomet, Inc., 156 F. 3d 1154, 1160 (Fed. Cir. 1998) (holding accused device having hip implant cup in "hemiserical shape"

---

[5]In light of this finding, the Court does not consider UCT's argument that the Predator System fails to meet other limitations set forth in Claim 1.  See Lantech, 32 F. 3d at 547 (holding "any deviation from the claim preclud[es] a finding of [literal] infringement").

not, as matter of law, equivalent to claimed cup having "generally conical outer surface," even though patentee offered expert testimony that "shape of the cup was irrelevant to achieving the desired result and that after successful implantation any shape would function essentially the same way").

Accordingly, Celerity has failed to create a triable issue of fact as to the doctrine of equivalents with respect to Claim 1 of the '539 Patent.

**B. U.S. Patent No. 6,293,310 ("'310 Patent")**

Celerity asserts the Predator System meets every limitation in Claim 6 of the '310 Patent.

Claim 6 claims:

A modular block gas panel connector comprising:

a body;

a single inlet to receive a gas, the inlet being formed in one face of the body and being adapted to mate with an outlet of one of a first gas manifold and a first active device;

a single outlet to provide the gas, the outlet being formed in the one face of the body and being adapted to mate with an inlet of one of a second gas manifold and a second active device; and

a channel that directly connects the single inlet only to the single outlet so that the outlet of the one of the first gas manifold and the first active device is directly connected to the inlet of one of the second gas manifold and the second active device;

wherein the one of the second gas manifold and second active device is positioned adjacent to the one of the first gas manifold and first active device.

See '310 Patent col. 16 ll. 18-36.

**1. Literal Infringement**

At the outset, UCT argues that Celerity lacks evidence to prove the Predator System has a "manifold."[6]  For the reasons stated by Celerity, however, a reasonable trier of fact

//

---

[6]The '310 Patent does not claim a "manifold" itself, but, rather, a device that connects adjacent manifolds.

7

1   could find the element described by Dr. Glew as the Predator System's "manifold," i.e., "U

2   tubes of stainless steel" to which plates, supports, bolts or fasteners are attached, (see

3   Boyle Decl. Ex. 13 at 21:19 - 22:10), is a (1) "structure," albeit it a multi-piece structure as

4   opposed to a one-piece structure; (2) "containing a channel or fluid pathway," i.e., the

5   channel within the steel U tube; and (3) "having openings allowing gases or fluid to enter

6   and exit." (See Order Construing Claims at 2:2-3.)

7       Next, with respect to the specific "modular block gas panel connector" claimed in

8   Claim 1, UCT argues that Celerity lacks evidence to prove the Predator System has such a

9   connector that joins two adjacent manifolds. In its opposition, Celerity relies on Dr. Glew's

10  report, which, according to Celerity, contains opinions sufficient to create a triable issue of

11  fact as to literal infringement based on such limitations.[7]  The Court disagrees.

12      In addressing the "channel that directly connects" limitation, Dr. Glew states, "This is

13  shown in the photographs as well as [UCT 1972-73], [UCT 8610]."  (See Swope Decl. Ex. E

14  ¶ 72 (brackets in original).)  Dr. Glew provides no explanation as to why such conclusion is

15  warranted from a review of those materials.[8]  Under such circumstances, the opinion is

16  insufficient to create a triable issue of fact.  See Techsearch, 286 F. 3d at 1372 (holding

17  party opposing motion for summary judgment of noninfringment must "at least" rely on

18  "statement of a fact set forth in detail in an affidavit"); see, e.g., Johnston v. IVAC Corp.,

19  885 F. 2d 1574, 1578 (Fed. Cir. 1989) (holding insufficient, for purposes of defeating

---

20

21      [7]Celerity also asserts in its opposition that UCT's motion is based "on the erroneous
    argument that [C]laim 6 of the '310 Patent covers only a modular block gas panel connector
22  that connects two adjacent manifolds," and further asserts that another "embodiment" of
    Claim 6 exists.  (See Pl.'s Opp. to Defs.' Mot. for Summ. J. of Non-infringement at 15:22-
23  27.)  The last limitation in Claim 6, however, requires each embodiment of the "modular
    block gas panel connector" to connect two "adjacent" manifolds.  See '310 Patent, col. 16 ll.
24  34-36.

25      [8]A factual basis for Dr. Glew's conclusion is not apparent from a review of such
    materials.  For example, "UCT 8610" is a figure of an element referred to by UCT as a
26  "restrictor."  (See id. Ex. K at UCT-008610.)  Dr. Glew does not offer an opinion that said
    "restrictor" is a "modular block gas panel connector."  Assuming, arguendo, such opinion
27  may be implied from Dr. Glew's citation to such document, Dr. Glew does not identify
    where in the "restrictor" there exists a channel that would directly connect the outlet of a
28  first manifold and active device to the inlet of a second manifold and active device.

1  summary judgment, declarant's statement he "reviewed" the accused product and

2  concluded it infringed certain claims in patents at issue therein).[9]

3       Accordingly, Celerity has failed to create a triable issue of fact as to literal

4  infringement with respect to Claim 6 of the '310 Patent.

5                    **2.  Doctrine of Equivalents**

6       Dr. Glew offers the opinion that the Predator System infringes the subject claim

7  under the doctrine of equivalents.  (See Swope Decl. Ex. E ¶¶ 74-77.)  UCT argues that Dr.

8  Glew's opinion as to the doctrine of equivalents is insufficient.  The Court agrees.

9       "Equivalency" must be established with "particularized testimony" on a "limitation-by-

10 limitation basis."  See Texas Instruments, 90 F. 3d at 1566-67.  Such requirement "assures

11 that the fact-finder does not, under the guise of applying the doctrine of equivalents, erase

12 a plethora of meaningful structural and functional limitations."  See id. at 1567.

13      Here, Dr. Glew, in the portion of his report addressing the doctrine of equivalents as

14 it pertains to the '310 Patent, does not expressly reference the "channel that directly

15 connects" limitation, let alone opine that an equivalent to such limitation exists in the

16 Predator System.  Dr. Glew does, however, state that the Predator System "mounts

17 industry-standard valves on blocks with an inlet and outlet connected by a passageway in a

18 manner indistinguishable to one of ordinary skill in the art."  (See Swope Decl. Ex. E ¶ 77.)

19 Arguably, by referencing the alleged existence of "an inlet and outlet connected by a

20 passageway," Dr. Glew is implicitly opining that some type of connector device with a

21 "passageway" therein joins two adjacent manifolds and active devices, and that such

22 "passageway" is a substantial equivalent to the "channel that directly connects."  Assuming,

23 arguendo, Dr. Glew's opinion can be so interpreted, such opinion would be sufficient to

24 _____

25      [9]By contrast, as to some limitations in other claims, Dr. Glew has supported his
   opinion that such limitations are met in the Predator System by setting forth a non-
26 conclusory factual basis for the opinion.  (See, e.g., Swope Decl. Ex. E ¶ 65 (setting forth
   factual basis for opinion that Predator System meets "bridging component" limitation set
27 forth in Claim 1 of U.S. Patent 6,435,215).)  Thus, Celerity knows how to provide the
   necessary factual support for an expert's opinion, when such support is available.
28

                                    9

1   create a triable issue of fact only if it is supported by "particularized testimony."  See Texas

2   Instruments, 90 F. 3d at 1567.  In this instance, the only support for any such implied

3   opinion as to the existence of a substantial equivalent to the "channel that directly

4   connects" is Dr. Glew's assertion that "the Predator product was designed from the outset

5   to be a direct replacement to the claimed manifolds in the patents in suit."  (See Swope

6   Decl. Ex. E. ¶ 77).  Such assertion, however, is not "particularized" as to the "channel that

7   directly connects" limitation.  See Texas Instruments, 90 F. 3d at 1567 ("Generalized

8   testimony as to the overall similarity between the claims and the accused infringer's product

9   or process will not suffice.")  Moreover, as noted, the '310 Patent claims a device that

10  connects two adjacent manifolds, not a "manifold" itself.

11        Accordingly, Celerity has failed to create a triable issue of fact as to the doctrine of

12  equivalents with respect to Claim 6 of the '310 Patent.

13        **C.  U.S. Patent No. 6,435,215 ("'215 Patent")**

14        Celerity asserts the Predator System meets every limitation in Claims 1 and 6 of the

15  '215 Patent.

16        Claim 1 claims:

17        A gas panel comprising:

18        a first manifold having an inlet and an outlet accessing a common surface of
           the first manifold, and a fluid passageway connecting the inlet of the first
19        manifold to the outlet of the first manifold and defining from the inlet of the
           first manifold to the outlet of the first manifold a generally lateral first flow
20        direction;

21        a second manifold having an inlet and an outlet accessing a common surface
           of the second manifold, and a fluid passageway connecting the inlet of the
22        second manifold to the outlet of the second manifold and defining from the
           inlet of the second manifold to the outlet of the second manifold a generally
23        lateral second flow direction;

24        a bridging component having an inlet and an outlet accessing a common
           surface of the bridging component, and a fluid passageway connecting the
25        inlet of the bridging component to the outlet of the bridging component and
           defining from the inlet of the bridging component to the outlet of the bridging
26        component a generally lateral third flow direction;

27        wherein the inlet of the bridging component is fluidly connected to the outlet of
           the first manifold and the outlet of the bridging component is fluidly connected

28

1

to the inlet of the second manifold, and the third flow direction is generally transverse to the first flow direction.

2

See '215 Patent col. 12 ll. 18-45.

3

4      Claim 6, an independent claim, differs from Claim 1 only in that the "third flow

5    direction is aligned with the first flow direction," see '215 Patent col. 13 ll. 11-12, as

6    opposed to Claim 1's limitation that the "third flow direction [be] generally transverse to the

first flow direction," see '215 Patent col. 12 ll. 43-45.

7
### 1.  Literal Infringement
8

9      UCT argues Celerity lacks evidence to prove the Predator System has a "manifold"

10   or a "bridging component."  In the alternative, UCT argues that if a triable issue exists as to

11   the presence of such elements in the Predator System, Celerity lacks evidence to prove

such elements have an "inlet" and "outlet" on a "common surface."  The Court disagrees.

12
13      First, as discussed above with respect to the '310 Patent, a trier of fact could

14   reasonably find the element described by Dr. Glew as the Predator System's "manifold,"

15   i.e., "U tubes of stainless steel" to which plates, supports, bolts or fasteners are attached,

16   (see Boyle Decl. Ex. 13 at 21:19 - 22:10), is a "structure containing a channel or fluid

pathway and having openings allowing gases or fluid to enter and exit," (see Order

17   Construing Claims at 2:2-3).

18
19      Second, for the reasons stated by Celerity, a trier of fact could reasonably find that

20   the Predator System has a "bridging component," i.e., a "component acting as a fluid

21   passageway for bridging between a manifold inlet and a manifold outlet."  (See id. at 2:14-

15.)  Specifically, Dr. Glew has offered such an opinion and, in this instance, has offered a

22   factual basis for his conclusion, in particular, his opinion that "Item 34" in a schematic of the

23   Predator System, provided by UCT, illustrates a component with a fluid passageway that

24   connects the outlet of a nitrogen manifold to the inlet of a hydrogen manifold.  (See Swope

25

26

27

28

11

1    Decl. Ex. E ¶ 65 and Ex. K at UCT-27571.)[10]

2           Lastly, for the reasons stated by Celerity, a trier of fact could reasonably find the

3    inlets and outlets of the Predator System's asserted "manifold" and "bridging component"

4    access a "common surface."  Specifically, Dr. Glew offers the opinion that the inlets and

5    outlets are on a "single plane," (see id. Ex. E ¶ 60), and UCT concedes the inlets and

6    outlets are "co-planar," (see Defs.' Mot. for Summ. J. of Nonfringement at 14:2-3).

7    Although UCT disputes that two objects located on the same plane are located on a

8    "common surface," the ordinary meaning of "plane" is "a surface containing all the straight

9    lines connecting any two points on it" or "any flat or level surface."  See American Heritage

10   Dict., New College Edition 1002 (1976).

11          Accordingly, Celerity has offered sufficient evidence to create a triable issue of fact

12   as to literal infringement with respect to Claims 1 and 6 of the '215 Patent.

13                      **2.  Doctrine of Equivalents**

14          In light of the Court's finding that Celerity has offered sufficient evidence to create a

15   triable issue as to literal infringement of Claims 1 and 6 of the '215 Patent, the Court finds it

16   unnecessary to consider Celerity's argument that, in the alternative, a triable issue of fact

17   exists as to the doctrine of equivalents.  See Texas Instruments, 90 F. 3d at 1563-64

18   (holding plaintiff can establish infringement by showing accused product either literally

19   infringes or infringes under doctrine of equivalents).

20          **D.  U.S. Patent No. 6,189,570 ("'570 Patent")**

21          Celerity asserts the Predator System meets every limitation in Claim 1 of the '570

22   Patent.

23   //

24   _____

25          [10]As discussed above, Celerity has not offered sufficient evidence to establish the
     Predator System has the "modular block gas block connector" claimed in Claim 1 of the
26   '310 Patent, either literally or under the doctrine of equivalents.  The "bridging component"
     claimed in the '215 Patent appears, arguably, to perform a function similar to that
27   performed by the "connector" claimed in the '310 Patent.  Dr. Glew has not, however,
     offered the opinion that the asserted "bridging component" in the Predator System, i.e., the
28   above-referenced "Item 34," is also the "connector" claimed in the '310 Patent.

                                          12

Claim 1 claims:

A gas panel for handling plural process gases, comprising:

a plurality of one-piece manifold bodies, each of said plurality of one-piece manifold bodies having thereon at least three identical component receiving stations, each of said component receiving stations having a gas inlet and a gas outlet, the gas outlet from a first component receiving station of a respective one-piece manifold body being connected by a permanent connection within the respective one-piece manifold body to a gas inlet of a neighboring component receiving station of the respective one-piece manifold body; and

a plurality of gas components, each of said gas components being connected to a respective receiving station on one of said plurality of one-piece manifold bodies, said gas components comprising at least one valve and at least one mass flow controller.

<u>See</u> '570 Patent, col. 12, ll. 10-26.

## 1.  Literal Infringement

UCT argues that Celerity lacks evidence to prove the Predator System meets the limitations set forth in Claim 1.  The Court agrees.

First, for the reasons stated above with respect to the '539 Patent, Celerity has failed to raise a triable issue as to the existence of a "one-piece manifold" in the accused device.

Second, Celerity has submitted no evidence by which a trier of fact could reasonably find that the Predator System's manifold has a "permanent connection" within said manifold by which the gas outlet of one receiving station on the manifold is connected to the gas inlet of the neighboring receiving station.  Although Dr. Glew asserts, based on his review of "UCT literature," that the asserted manifold in the Predator System has inlets and outlets that are "connected," Dr. Glew does not opine that such connections are, as Claim 1 requires, "permanent" in nature.  (<u>See</u> Swope Decl. Ex. E ¶ 39.)  Further, to the extent such an opinion might be implicit, Dr. Glew fails to set forth any factual basis for such implied opinion.

Accordingly, Celerity has failed to create a triable issue of fact as to literal infringement with respect to Claim 1 of the '570 Patent.

//

13

**2.  Doctrine of Equivalents**

Dr. Glew offers the opinion that the Predator System infringes the subject claim under the doctrine of equivalents.  (See id. Ex. E ¶¶ 44-49.)  In providing such opinion, however, Dr. Glew does not state that the Predator System's asserted manifold has within it a substantial equivalent to the claimed "permanent connection" by which inlets and outlets of neighboring receiving stations thereon are connected, and, to the extent such opinion might be considered implicit in his report, Dr. Glew has not provided the requisite "particularized testimony" to support any such conclusion.  See Texas Instruments, 90 F. 3d at 1567.

Additionally, as noted, Claim 1 requires a "plurality of one-piece manifolds."  See '570 Patent, col. 12 line 12 (emphasis added).  Although Dr. Glew opines that the manifold in the Predator System, if not literally a "one-piece manifold," is the equivalent of a "one-piece manifold," for the reasons stated above with respect to the '539 Patent, a theory of equivalence based on such opinion would essentially vitiate a claim limitation.  See Tronzo, 156 F. 3d at 1160.

Accordingly, Celerity has failed to create a triable issue of fact as to the doctrine of equivalents with respect to Claim 1 of the '570 Patent.

**E.  U.S. Patent No. 6,474,700 ("'700 Patent")**

Celerity asserts the Predator System meets every limitation in Claim 1 of the '700 Patent.

Claim 1 claims:

A gas panel comprising:

a plurality of gas inlets;

a one-piece gas panel manifold connected to each inlet of each of said plurality of gas inlets, each of said one-piece gas panel manifolds defining a substantially transverse gas path therethrough and having a plurality of active device stations positioned across a top face thereof,

a plurality of removable active devices removably connected to each of the plurality of active device stations for receiving said gas, each of said removable active devices being connected by a single device connector to

14

couple both to inlet and outlet ports of each of the plurality of active device stations,

wherein at least one of the plurality of active devices is preassembled and comprises a base, a keeper mounted on the base, a seal held by the keeper, a fastener retained with the base and extending through the base, and a retainer; and

a plurality of gas outlets connected to each of the one-piece manifolds.

See '700 Patent, col. 12 ll. 8-31.

### 1. Literal Infringement

UCT first argues that Celerity lacks evidence to prove the Predator System has a "one-piece gas panel manifold." For the reasons discussed above with respect to the '539 Patent, the Court agrees.

UCT additionally argues that Celerity lacks evidence to prove the Predator System has "at least one" active device that is "preassembled and comprises a base, a keeper mounted on the base, a seal held by the keeper, a fastener retained with the base and extending through the base, and a retainer." In response, Celerity relies on Dr. Glew's report, which states as follows: "The devices all contain a base, a keeper mounted on the base, a seal held by the keeper, multiple fasteners, typically four, retained with the base and extending through the base and retainer. These features are clearly shown in the photographs taken during an inspection, and also in the documents provided by UCT." (See Swope Decl. Ex. E ¶ 54.) Such conclusion, for the reasons stated above with respect to the '310 Patent, is insufficient to create a triable issue of fact; specifically, Dr. Glew's conclusion is not accompanied by any explanation as to why the "photographs" and unspecified "documents" illustrate how the Predator System meets such limitation. See Novartis Corp. v. Ben Venue Laboratories, Inc., 271 F. 3d 1043, 1051 (Fed. Cir. 2001) ("If all expert opinions on infringement or noninfringement were accepted without inquiry into their factual basis, summary judgment would disappear from patent litigation.")

Accordingly, Celerity has failed to create a triable issue of fact as to literal infringement with respect to Claim 1 of the '700 Patent.

1

### 2.  Doctrine of Equivalents

Dr. Glew has offered an opinion that the Predator System infringes the subject claim under the doctrine of equivalents.  (See Swope Decl. Ex. E ¶¶ 56-57.)  UCT argues such opinion is insufficient, on the ground the opinion does not set forth particularized testimony as to each limitation in Claim 1.  The Court agrees.

First, for the reasons stated above with respect to the '539 and '570 Patents, Celerity cannot establish that the multi-piece "manifold" in the Predator System is a substantial equivalent to the claimed "one-piece manifold."

Second, with respect to the fourth claim limitation, Dr. Glew offers the following opinion, stated in full:

> Furthermore, the Predator product does have a preassembled base, with seal held by a keeper, and fasteners retained with the base.  Whether or not it is attached in the factory or the field, it serves substantially the same function, in substantially the same way, with the same result.  The result is that one can achieve the effect of a correctly mounted active device component without leaky or otherwise damaged seals.  The mounting occurs in substantially the same way; the retained fasteners are tightened on to the receiving station. The function is the same of keeping the seals aligned and the fasteners at hand.

(See id. Ex. E ¶ 57.)  The above-quoted opinion consists of five conclusory sentences, without the requisite "particularized testimony" to support a finding that the Predator System contains a substantial equivalent to the claimed element.  See Texas Instruments, 90 F. 3d at 1567.

Accordingly, Celerity has failed to create a triable issue of fact as to the doctrine of equivalents with respect to Claim 1 of the '700 Patent.

### F.  U.S. Patent No. 6,394,138 ("'138 Patent")

Celerity asserts the Predator System meets every limitation in Claims 1, 2 and 12 of the '138 Patent.

Claim 1 claims:

A manifold system for enabling a distribution of fluids comprising:

a plurality of individual manifold blocks, each manifold block having a fluid passageway with an entrance port and exit port accessing only a common

16

1    surface; and

2    means for removably interlocking a pair of adjacent manifold block[s] to each
     other to operatively permit their respective fluid passageways to be positioned
3    for interconnection.

4    See '138 Patent col. 14 ll. 17-25.

5        Claims 2 and 12 are dependent on Claim 1.  In Claim 2, the claimed "pair of adjacent

6    manifold block[s]" must be "identical in configuration."  See '138 Patent col. 14 ll. 26-27.  In

7    Claim 12, the claimed "means for removably interlocking" must "hold[ ] the individual

8    common surfaces of adjacent manifold blocks in a common plane to facilitate a sealing of

9    interconnected pathways."  See '138 Patent col. 15 ll. 7-10.

10                  **1.  Literal Infringement**

11                    **a. Claim 1**

12       UCT argues Celerity lacks evidence to prove that the Predator System has "manifold

13   blocks."  Additionally, UCT argues Celerity lacks evidence that the Predator System has

14   any means that performs the recited "removably interlocking" function, or, in the alternative,

15   that the Predator System does not have any of the "means" previously identified by the

16   Court, in its Order Construing Claims, that perform the recited function.  Celerity, again,

17   relies on Dr. Glew's opinion to support its argument that all the limitations set forth in Claim

18   1 are met by the Predator System.

19       A "manifold block" is "one in a series of manifolds that, when combined together,

20   form a longer manifold or gas stick," (see Order Construing Claims at 2:6-7), not a "block"

21   in the geometric sense.  As discussed above, a triable issue of fact exists as to whether the

22   Predator System has a "manifold," i.e., "U tubes of stainless steel" to which plates,

23   supports, bolts or fasteners are attached.  (See Boyle Decl. Ex. 13 at 21:19 - 22:10.)  Dr.

24   Glew offers the opinion that various diagrams of the Predator System illustrate a group of

25   such "manifolds" combined in a line to form a gas stick, for example, a UCT diagram

26   showing, in Dr. Glew's opinion, several "manifolds" connected to form what UCT refers to in

27   such diagram as a "gas line."  (See Swope Decl. Ex. E ¶ 80; see, e.g., id. Ex. K at UCT-

28

                                      17

1   003284.)  Based on such opinion, and the asserted factual basis therefor, the Court finds a

2   trier of fact could reasonably find that the Predator System has "a plurality of individual

3   manifold blocks."[11]  Further, for the reasons stated above with respect to the '215 Patent, a

4   trier of fact could reasonably find each such asserted "manifold block" has an entrance and

5   an exit port that "access[ ] only a common surface."  See '138 Patent, col. 14 ll. 19-21.

6       Dr. Glew also offers the opinion that each asserted "manifold block" is "removably

7   interlocked" to the adjacent "manifold block," such that "their respective fluid passageways"

8   will be positioned for interconnection."  (See Swope Decl. Ex. E ¶ 82.)  According to Dr.

9   Glew, such interlocking occurs by reason of "flanges at ends of the U tubes," (see id.); as

10  discussed above, a trier of fact could reasonably find that a U tube has a fluid passageway.

11  In support of his opinion that such asserted "flanges" perform the function recited in Claim

12  1, Dr. Glew points to a device referred to by UCT in its literature as a "connector," and

13  which is illustrated by UCT as connecting the elements identified by Dr. Glew as "manifold

14  blocks."  (See id. Ex. E ¶ 82; id. Ex. K at UCT-001986.)  Based on such opinion, and the

15  asserted factual basis therefor, the Court finds a trier of fact could reasonably find the

16  Predator System has a means to perform the function recited in Claim 1, specifically, a

17  means to removably interlock two adjacent manifold blocks to operatively permit their

18  respective fluid passageways to be positioned for interconnection.

19      The Court next considers the nature of the asserted means, specifically, the

20  "flanges" in the Predator System that, according to Dr. Glew, perform the recited function.

21  "Literal infringement of a § 112, ¶ 6 limitation requires that the relevant structure in the

22  accused device . . . be identical or equivalent to the corresponding structure in the

23  specification."  Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc., 389 F.

24  3d 1370, 1378 (Fed. Cir. 2004) (internal quotation and citation omitted).  Put another way,

25

26      [11]Further, UCT's expert Velinsky, in describing the Predator System, opines in his
    expert report that "[a] collection of the U-shaped pipes forms the gas stick."  (See Velinsky
27  Decl. Ex. 1 ¶ 12.i.)  As stated above, a trier of fact could reasonably find that the Predator
    System's U tubes, when assembled with their supporting structures, are "a plurality of
28  individual manifold blocks."

1   "structural equivalents under § 112, ¶ 6 are included within literal infringement of means-

2   plus-function claims." See id.  Here, the specification of the '138 Patent discloses three

3   alternative structures to perform the recited function, one of which is "an upper flange and

4   lower flange with complimentary configurations that are cantilevered from the central body

5   position." (See Order Construing Claims at 2:20-24.)[12]  As noted, Dr. Glew opines that the

6   assertedly interlocking device referred to by UCT as a "connector" is a "flange."  Dr. Glew

7   further opines that the asserted "flanges" in the Predator System constitute a structure that

8   is "equivalent" to the flanges disclosed in the specification.  (See Swope Decl. Ex. E ¶ 93.)

9   As factual support for such opinion, Dr. Glew relies on the description of the asserted

10  "flanges" provided during UCT's "30(b)(6) deposition," then sets forth, in paraphrased form,

11  the testimony provided by UCT's witness, and concludes by opining that the flanges

12  described by UCT's deponent would be considered by "one of ordinary skill in the art" to be

13  "equivalent" to the flanges disclosed in the specification.  (See id. Ex. E ¶ 95.)  Based on

14  such opinion, and the asserted factual basis therefor,[13] the Court finds a trier of fact could

15  reasonably find the Predator System has flanges that are equivalent to the flange system

16  disclosed in the specification.

17         Accordingly, Celerity has offered sufficient evidence to create a triable issue of fact

18

19         [12]The other two structures disclosed in the specification are a specific type of
    "connector plate" and a specific type of "thin flat plate."  (See id. at 2:24-27.)  Dr. Glew has
20  not offered the opinion that the Predator System has a "connector plate" or a "thin flat
    plate," or an equivalent thereto, to perform the recited function.  In its opposition, however,
21  Celerity argues that certain testimony provided by Milburn, UCT's Rule 30(b)(6) witness,
    should be interpreted as an admission that the Predator System has a "plate" that performs
22  the recited function.  Celerity, however, offers no expert opinion in support of such
    interpretation of the cited testimony, and such interpretation is not obvious therefrom.  In
23  any event, in light of the Court's finding, discussed infra, that a triable issue exists as to the
    existence of an equivalent to the "flanges" disclosed in the specification, the Court does not
24  reach Celerity's alternative argument with respect to a "plate."

25         [13]Although both parties offer excerpts from the "30(b)(6) deposition," i.e., the Milburn
    deposition, neither party offers the specific portions that Dr. Glew has paraphrased in
26  setting forth the factual basis for his opinion that the Predator System's asserted "flanges"
    are equivalent to the flanges disclosed in the specification.  Further, UCT has not
27  challenged the accuracy of Dr. Glew's paraphrasing.  Under such circumstances, for
    purposes of the instant motion, the Court assumes Dr. Glew's paraphrasing of the subject
28  testimony represents an accurate rendition of the actual testimony provided by Milburn.

1 as to literal infringement with respect to Claim 1 in the '138 Patent.

2 **b.  Claims 2 and 12**

3 As noted, Claim 2 is dependent on Claim 1 and requires the claimed "pair of

4 adjacent manifold block[s]" interlocked by the means to be "identical in configuration."  See

5 '138 Patent col. 14 ll. 26-27.  Claim 12, as noted, is dependent on Claim 1 and requires the

6 claimed means, in addition to "removably interlocking a pair of adjacent manifold block[s] to

7 each other to operatively permit their respective fluid passageways to be positioned for

8 interconnection," to "hold[ ] the individual common surfaces of adjacent manifold blocks in a

9 common plane to facilitate a sealing of interconnected pathways."  See '138 Patent col. 15

10 ll. 7-10.

11 In its motion, UCT argues that because Celerity lacks evidence to establish literal

12 infringement as to Claim 1, Celerity likewise lacks evidence to establish literal infringement

13 of dependent Claims 2 and 12.  In light of the Court's finding that a triable issue of fact

14 exists as to literal infringement of Claim 1, UCT is not entitled to summary judgment on

15 Celerity's claim of literal infringement with respect to Claims 2 and 12.[14]

16 **2.  Doctrine of Equivalents**

17 In light of the Court's finding that Celerity has offered sufficient evidence to create a

18 triable issue as to literal infringement of Claim 1, and UCT having made no argument

19 specific to literal infringement of Claims 2 and 12, the Court finds it unnecessary to consider

20 Celerity's argument that, in the alternative, a triable issue of fact exists as to the doctrine of

21 equivalents.  See Texas Instruments, 90 F. 3d at 1563-64 (holding plaintiff can establish

22 infringement by showing accused product either literally infringes or infringes under

23 ─────────────

24 [14]Because UCT has not argued that, even if a triable issue of fact exists as to literal infringement of Claim 1, Celerity lacks evidence to prove literal infringement of Claims 2 and 12, the Court has not considered whether Celerity has offered sufficient evidence to

25 create a triable issue as to the Predator System's having met the additional limitations set forth in said claims.  The Court notes, however, that, at least with respect to Claim 2, the

26 existence of such evidence is questionable, in light of Dr. Glew's opinion that "the Predator blocks use two different sizes of [U]-tubes in adjacent blocks," (see Swope Decl. Ex. E ¶

27 97), and Claim 2's requirement that the two adjacent blocks be "identical in configuration," see '138 Patent col. 14 ll. 26-27.

28

1   doctrine of equivalents).

2   **II. Dismissal of Counterclaims**

3       In its Complaint for Declaratory Judgment of Patent Non-Infringement and Invalidity,

4   filed September 2, 2005,[15] UCT alleges, in its Second Cause of Action, that each of the

5   patents at issue herein is invalid.  Additionally, in its Counterclaim, filed May 17, 2006, UCT

6   alleges that each of the patents at issue herein is unenforceable.

7       Where a district court has found that a plaintiff cannot establish a claim of

8   infringement, the district court has the discretion to "dismiss as moot [a] counterclaim of

9   invalidity and unenforceability."  See Phonometrics, Inc. v. Northern Telecom Inc., 133 F.

10  3d 1459, 1468 (Fed. Cir. 1998).  As discussed above, the Court has found Celerity lacks

11  sufficient evidence to create a triable issue of fact as to infringement of the asserted claims

12  in the '539, '310, '570 and '700 Patents.  Under the circumstances presented herein, the

13  Court finds it appropriate to exercise its discretion to dismiss as moot UCT's counterclaims

14  for invalidity and unenforceability to the extent such counterclaims pertain to the '539, '310,

15  '570 and '700 Patents.

16      Accordingly, such counterclaims will be dismissed as moot

17                              **CONCLUSION**

18      For the reasons stated above:

19      1.  UCT's motion for summary judgment is hereby GRANTED in part and DENIED in

20  part, as follows:

21          a.  Summary judgment in favor of UCT on Celerity's claims that UCT has

22  infringed the '539, '310, '570 and '700 Patents, specifically, Counts I, II, IV, and VII of

23  Celerity's Complaint, is hereby GRANTED;

24          b.  Summary judgment in favor of UCT on UCT's counterclaim for declaratory

25  judgment of non-infringement is hereby GRANTED, to the extent the First Cause of Action

26  _____

27      [15]UCT filed such pleading in Case No. 5-3560 MMC, which, by order filed January
    18, 2006, was consolidated with the instant action.  In the order of consolidation, the Court
28  deemed UCT's complaint to be a counterclaim to the complaint filed herein.

in UCT's Complaint for Declaratory Judgment seeks such relief with respect to the '539, '310, '570 and '700 Patents; and

        c.  In all other respects, UCT's motion is hereby DENIED.

2.  Celerity's motions to strike the Declaration of Steven Velinsky and the expert report of Nelson Urdaneta are hereby DENIED as moot.

3.  Celerity's motion in limine to preclude the testimony of Nelson Urdaneta at trial is hereby DENIED without prejudice.

4.  UCT's counterclaims for invalidity and unenforceability, to the extent said counterclaims pertain to the '539, '310, '570 and '700 Patents, are hereby DISMISSED as moot.

**IT IS SO ORDERED.**

Dated:  April 23, 2007

_____
MAXINE M. CHESNEY
United States District Judge